FILED

2007 Mar-12  PM 02:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALAN STOCKDALE, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | )   Case No. 2:02-cv-02954-HGD |
| | ) |
| BAYER CORPORATION, | ) |
| | ) |
| Defendant | ) |

## MEMORANDUM OPINION

The above entitled civil action is before the court on the motion for summary judgment filed by defendant with respect to the claims of plaintiff Alan Stockdale. (Doc. #35).  This matter is before the undersigned United States Magistrate Judge based upon the consent of the parties pursuant to 28 U.S.C. § 636(c)(1) and Rule 73, Fed.R.Civ.P.

### STANDARD OF REVIEW

This matter is considered by the court pursuant to the provisions of Rule 56, Fed.R.Civ.P.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202

(1986). Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-movant is to be believed and all

2

justifiable inferences are to be drawn in his or her favor.  *Id.* at 255, 106 S.Ct. at 2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970).  However, "[a] court need not permit a case to go to a jury when the inferences that are drawn from the evidence and upon which the non-movant relies are 'implausible.'"  *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 592, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  It is, therefore, under this standard that the court must determine whether plaintiff can meet its burden of coming forward with sufficient evidence as to each material element of its claim sufficient to permit a reasonable jury to find in its favor.

## DISCUSSION

Plaintiff, Alan Stockdale, is one of a number of plaintiffs who brought this products liability suit against defendant Bayer Corporation and other defendants. Bayer formerly manufactured and marketed certain over-the-counter products containing phenylpropanolamine (PPA) under the Alka-Seltzer Plus® brand name. The plaintiffs alleged that they purchased and ingested products containing PPA and that they thereafter suffered strokes and/or seizures, and permanent disability or injury.  Plaintiff Stockdale alleges that his ingestion of Alka-Seltzer Plus caused him to suffer a stroke on or about November 16, 1991.  (Defendant's Ex. B, Plaintiff's

Fact Sheet (PFS), at 3, ¶¶ C & D;[1] Doc. #1, Complaint, at 2, 4, ¶¶ 4, 11 & 24). The complaint asserted causes of action for violation of the Alabama Extended Manufacturers Liability Act (AEMLD), negligence and wantonness, breach of implied warranties of merchantability and fitness for a particular purpose, misrepresentation and suppression.

On or about March 17, 2003, this case was transferred to the United States District Court for the Western District of Washington for consolidation with other similar cases. *See In re MDL-1407 Phenylpropanolamine Litigation*, MDL Case CV03-191. Certain discovery with respect to plaintiff's claims took place in the MDL court: the PFS (treated as written discovery responses); plaintiff's deposition; the depositions of plaintiff's brother and sister, Spencer Stockdale and Wanda Stockdale; the deposition of plaintiff's physician, Dr. Clay Davis; and collection of various medical, employment and other records relating to plaintiff.

In accordance with the MDL Court's orders, MDL plaintiffs served Rule 26 disclosures, which included expert testimony as to purported associations and general causation between PPA ingestion and stroke, seizure, psychosis and cardiac injuries. On February 10, 2003, Bayer and other MDL defendants filed a Motion to Preclude Plaintiffs' Expert Opinions as to General Causation. (*In Re Phenylpropanolamine (PPA) Products Liability Litigation*, W.D.Wash., MDL Docket No. 1407, Docket

---

[1] While this case was pending in the MDL, plaintiff completed a Plaintiff's Fact Sheet (PFS), which provided information about his claims and medical history, among other topics.

Entry 1438). In a preliminary ruling, the MDL Court found that "Plaintiffs offered no scientific basis for admitting expert opinions" on several issues critical to their claims. (*See* MDL Docket Entry 1693).

On June 18, 2003, the MDL Court granted defendants' Motion to Preclude in part and issued written reasons. (Defendant's Ex. M, MDL Docket Entry 1892). Pursuant to Federal Rules of Evidence 702 and 703, and the Supreme Court's related decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Court found that certain proffered opinions as to plaintiffs' injuries are "scientifically unreliable" and, in particular, that "expert testimony associated with . . . injuries occurring more than three days after ingestion of a PPA-containing product . . . [is] inadmissible." (*Id.* at 10-11). The MDL Court further concluded that only "expert testimony as to an association between PPA and hemorrhagic or ischemic stroke," and not other alleged injuries, would be admissible to prove the causation element of any plaintiff's case. (*Id.* at 39). Therefore, an essential element of a plaintiff's case is that he had a stroke within 72 hours after using a PPA-containing medication. Mere allegations of stroke are legally insufficient to satisfy the injury element of a claim. (*Id.*).

On or about March 15, 2006, the claims of plaintiff Stockdale were remanded by the MDL to this court for case-specific expert discovery, pretrial, and trial.

In its motion for summary judgment, Bayer Corporation (Bayer) contends that it is entitled to summary judgment with respect to all claims asserted by plaintiff

Stockdale because there is no evidence that he had a stroke within 72 hours of his alleged ingestion of Bayer's PPA-containing Alka-Seltzer Plus, or indeed, that he had a stroke or sustained any injury whatsoever related to his alleged ingestion of Alka-Seltzer Plus.

In his deposition, plaintiff testified that he had suffered at least three strokes in his life--in 1970, 1980 and 1991.  (Defendant's Ex. D, Depo. of Alan Stockdale, at 45:6-46:7).  He claimed in his deposition that Bayer products caused the 1980 and 1991 strokes.  (*Id.* at 123:12-15).  Plaintiff claims in his PFS that he received treatment for his alleged November 16, 1991, stroke in the emergency room of Citizens Baptist Medical Center (CBMC) in Talladega, Alabama.  (Defendant's Ex. B, PFS, at 10, ¶ A.2.).  In his deposition, plaintiff testified he was seen at CBMC for his alleged November 16, 1991, stroke.  (Defendant's Ex. D, Depo. of Alan Stockdale, at 133:23-134:20).

In response to the PFS request for medical records related to his alleged injury, plaintiff produced medical records of CBMC.  (Defendant's Ex. E, CMBC records produced by plaintiff).  None of the CBMC medical records produced by plaintiff indicate or suggest that he had a stroke or any other injury or received any treatment on November 16, 1991, or on any date in November 1991.

Bayer independently collected all known medical, radiology, pathology and billing records from CBMC (195 pages of records) and found no evidence therein that plaintiff had suffered a stroke in November 1991 or at any other time.  (Defendant's

6

Ex. F, CMBC Records Certifications).  Bayer did identify a CT scan of plaintiff's brain that was taken in April 2003.  The scan was normal and did not evidence a prior stroke.  (Defendant's Ex. G, Depo. of Dr. Clay Davis, at 73:16–73:19, 79:1–79:20; Defendant's Ex. H, CT Report).

Bayer asserts that none of the medical records collected and produced in this case, by either Bayer or plaintiff, document or substantiate plaintiff's alleged stroke on November 16, 1991, or at any other time, nor do they indicate any injury in November 1991.  Bayer avers it has collected by authorization or subpoena over seven hundred (700) pages of records relating to plaintiff, including certified records from Dr. Rey C. Alba, Citizens Baptist Medical Center, Baptist Health Center, Dr. Richard F. Bliss, Buy Wise Discount Pharmacy, Cheaha Mental Health Center, Dr. Clay Davis, Dr. Dawson Leigh Murphy, Northeast Alabama Regional Medical Center, Dr. Assis Soares, Cigna Medicare Administration, the Social Security Administration, and the State of Alabama Medicaid Agency, as well as records from the University of Alabama Birmingham Medical Center.  Bayer states it also requested and received records from Voyager Insurance Company.  Defendant avers that no records received from these entities substantiate plaintiff's alleged stroke injury or any November 1991 injury.  The court has performed an independent review of all medical records of plaintiff submitted by defendant and has found no record of a stroke or other injury in November 1991.  Indeed, plaintiff frequently has given a

medical history which omits any mention of a stroke or other such injury in the years he contends he suffered a stroke.

In 2003, two years after the commencement of this action, plaintiff presented at CBMC with complaints of a headache and left-sided weakness. (Defendant's Ex. I, CMBC Medical Records from April 24, 2003). Plaintiff reported a past history of "CVA" (cerebrovascular accident), but this self-reported injury was not substantiated by the records from this date or any other. (*See id.*). CMBC medical personnel ordered a CT scan, which showed "no acute intracranial pathology." (Defendant's Ex. H).

Dr. Clay Davis is plaintiff's primary care physician. He works at the clinic which has been treating plaintiff since 1987, and he personally has been treating plaintiff since 2001. (Defendant's Ex. G, Depo. of Dr. Clay Davis, at 19:3–19:12). Dr. Davis reviewed plaintiff's clinic records starting January 3, 1987. (*Id.* at 19:14–20:22). Dr. Davis found no evidence that plaintiff ever had suffered a stroke or that he had any stroke or injury in November 1991. (Defendant's Ex. J, Records of Dr. Clay Davis). When Dr. Davis began treating plaintiff in 2001, he obtained a thorough medical history from plaintiff, and plaintiff did not tell Dr. Davis that he had suffered a stroke. (Defendant's Ex. G, Depo. of Dr. Clay Davis, at 54:9–56:3). Plaintiff never told Dr. Davis he had a stroke. (*Id.* at 72:14-16). Dr. Davis has seen no sign that plaintiff ever has suffered any kind of stroke, and Dr. Davis testified that he had never treated plaintiff for any type of stroke. (*Id.* at 58:10–58:12, 72:8–72:16).

Plaintiff stated in his PFS that he had taken Alka-Seltzer Plus on November 16, 1991, for cold symptoms, at Dr. Davis' direction.  He also stated he discussed with Dr. Davis whether his alleged physical symptoms of right side weakness were related to ingestion of a PPA-containing product.  (Defendant's Ex. B, PFS, at 29-30).

Plaintiff's sister, Wanda Stockdale, lived with plaintiff for approximately two years, beginning in 1992 or 1993.  When asked if plaintiff ever had suffered a stroke, she responded "Not that I know of."  (Defendant's Ex. K, Depo. of Wanda Stockdale, at 14:9–14:11, 28:15–28:20).  Plaintiff's brother also did not know if plaintiff ever suffered a stroke.  (Defendant's Ex. L, Depo. of Spencer Stockdale, at 43:3–43:8).

Bayer asserts it is entitled to summary judgment because plaintiff has no evidence of a stroke occurring within 72 hours of his ingestion of Alka-Seltzer Plus or other Bayer product containing PPA, or that he had a stroke or other injury related to his ingestion of Alka-Seltzer Plus or other Bayer product containing PPA. Defendant argues that under the MDL court's *Daubert* ruling, as well as Alabama law, summary judgment is due to be granted because plaintiff has failed to establish injury or causation.

In response to defendant's motion for summary judgment, plaintiff submitted four x-rays of his head taken at CMBC on June 16, 2006.  They are not accompanied by any explanation of what the x-rays show or are supposed to show or by any affidavit of a medical doctor or radiologist trained in reading and diagnosing from x-rays.  Plaintiff also submitted a response in which he states:

The aspirin aid in the strokes.  The doctor that treat me for the strokes are deceased.  Their names are Dr. Roberts, Dr. Davis, Dr. Bliss.  The problems I have is on the left side of my head.  X rays can be taken to see the problem.  To the best of my knowledge, first stroke occur when I was fifteen or sixteen years of age after taking eight Bayer aspirin a day.  I was treat at U.B.A. hospital in Birmingham.  The other three strokes occur in 1990, 1991, 1993, the decision was made by the doctor to quit using Bayer products because they said [sentence ends here in original]. . . .  The Bayer Corporation's motion for summary is failure to establish injury.  After watching the advertisement by Goldberg, they did not state a specific time, date or year of injury, it stated that if the injury had occurred you could receive compensation.  He state at the hearing if it was necessary they would call in medical expert.  If they did not stated specific date or time, year I think my case should be forwarded on.

(Doc. #39) [sic].

In reply, defendant avers that plaintiff now appears to argue that his ingestion of Bayer aspirin, which does not contain PPA,[2] as opposed to a PPA-containing Bayer product, caused him to suffer one or more strokes.  Plaintiff did testify at his deposition that Bayer aspirin had caused him to have a stroke.  (*See* Defendant's Ex. D, Depo. of Alan Stockdale, at 25-35).  Defendant also obtained the radiology report for the x-rays plaintiff submitted as evidence in his behalf.  The report concludes that the x-rays show "[n]o fracture, dislocation or skeletal lesion," that "[v]isualized sinuses [are] clear" and that there is "[n]o acute skeletal abnormality." (Defendant's Reply at Ex. B, Report of Dr. Thaddeus Coleman).

---

[2] *See* Defendant's Reply at Ex. A, Declaration of Chris Allen, at ¶ 3.

A key element in a products liability action is proximate cause; that is, that use of the product proximately caused injury to the plaintiff. *See Banner Welders, Inc. v. Knighton*, 425 So.2d 441, 451 (Ala. 1982). The plaintiff has the burden of presenting substantial evidence of proximate cause. *Hicks v. Vulcan Eng'g Co.*, 749 So.2d 417, 424 (Ala. 1999). "Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new and independent causes, produces an injury or harm and without which the injury or harm would not occur." *Dillard v. Pittway Corp.*, 719 So.2d 188, 192 (Ala. 1998) (citing *Thetford v. City of Clanton*, 605 So.2d 835 (Ala. 1992)).

In this case, plaintiff has failed to come forth with evidence to satisfy the MDL court's *Daubert* ruling requiring "expert testimony as to an association between PPA and hemorrhagic or ischemic stroke," with injury occurring no more than three days after ingestion of a PPA-containing product. While plaintiff claims to have ingested Alka-Seltzer Plus on November 16, 1991, and to have suffered a stroke for which he received treatment on November 19, 1991, he has presented no medical records or expert testimony to support this claim. In fact, his medical records show no treatment whatsoever in November 1991 and no evidence of a stroke at any time, apart from one self-report by plaintiff not in the applicable time frame.

In addition, this lack of evidence to support plaintiff's claim of injury resulting from Alka-Seltzer Plus or other PPA-containing Bayer product is fatal to his state law product liability claims. He has not proffered any evidence to this court to support

11

even an inference of causation.  This is a products liability case involving Bayer Alka-Seltzer Plus, a medicine which contained PPA.  Plaintiff, in his PFS, did assert that Alka-Seltzer Plus caused him injury.  However, in his deposition and in his response to defendant's motion for summary judgment, plaintiff appears to place the blame for any alleged stroke on Bayer aspirin, not Alka-Seltzer Plus.  He also appears to rely on an advertisement from a law firm stating that if plaintiff had been injured, he could receive compensation.  He argues that since the advertisement did not state a specific time, date, or year of injury, he should not be so limited and his case should go forward based simply on his allegation that he was injured at some time in the past.  This is not enough to withstand defendant's motion for summary judgment.

Based on the foregoing, defendant's motion for summary judgment is due to be granted as to all claims asserted by plaintiff Alan Stockdale in this action, and the claims of plaintiff Alan Stockdale in this action are due to be dismissed with prejudice.  A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 12th day of March, 2007.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE